## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **REBECCA VINSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Case Number:** |
| ) | |
| **WAFFLE HOUSE, INC, d/b/a** ) | |
| **WAFFLE HOUSE, MITCHELL** ) | |
| **HOWELL, DAVID COOLEY, and** ) | |
| **MICHELLE JONES,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendants.** ) | |

## **COMPLAINT**

COMES NOW the Plaintiff, Rebecca Vinson (hereinafter "Vinson"), and for her complaint against the Defendants, Waffle House, Inc. d/b/a Waffle House (hereinafter "Waffle House"), and certain employees of Waffle House, namely Mitchell Howell, David Cooley, and Michelle Jones, states as follows:

Vinson seeks payment by Waffle House for damages to redress the deprivation of rights secured by Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. §2000e *et seq.* (hereinafter "Title VII"). Vinson also seeks compensation for damages caused by particular Defendants individually, in redress of violated rights secured under the laws of the State of Alabama.

1

**Jurisdiction, Venue, and Parties**

1. This Court has original federal question jurisdiction over Vinson's federal law claims pursuant to 42 U.S.C. § 2000e *et seq.*; by 28 U.S.C. § 1331, this action arising under the laws of the United States of America; by 29 U.S.C. § 1337, this action arising under Acts of Congress regulating commerce; and 28 U.S.C. §§ 2201 and 2202, providing for further relief.

2. Jurisdiction over Plaintiff's state law claims is provided by supplemental jurisdiction under 28 U.S.C. § 1367.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b), because the unlawful employment practices alleged in this Complaint were committed in Calhoun County in the Northern District of Alabama.

4. Plaintiff Rebecca Vinson (hereinafter "Vinson" or "Plaintiff") is an individual resident of the State of Alabama, a present resident of Calhoun County and, during all times relevant to this Complaint, was a full-time Waffle House employee, non-exempt from Title VII coverage under 42 U.S.C. § 2000e-1.

5. Waffle House, Inc., d/b/a Waffle House, is a foreign corporation organized under the laws of the State of Georgia, and registered to do business in Alabama, and a covered 'employer' for the purposes of Title VII 42 U.S.C. § 2000e(b).

6. Defendant Mitchell Howell (hereinafter "Howell") is an individual person over the age of 19, currently residing in the State of Alabama.

7. Defendant David Cooley (hereinafter "Cooley") is an individual person over the age of 19, currently residing in the State of Alabama.

8. Defendant Michelle Jones (hereinafter m, a qualified woman "Jones") is an individual person over the age of 19 and a resident of the State of Alabama.

9. For purposes of Plaintiff's Title VII claim, Howell, Jones, and Cooley can be and are named only in each's capacity as a supervisory agent for Waffle House. Each are an "employer" under 42 U.S.C. § 2000e (b). However, each are named individually for the purposes of Plaintiff's state law claims.

10. On July 17, 2017, Vinson filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), within one hundred eighty (180) days following Waffle House's most recent discriminatory act.

11. On July 27, 2017, the EEOC issued Vinson a Notice of Right to Sue, attached properly hereto as *Plaintiff's Exhibit 1*.

12. Vinson initiated this action on October 26, 2017, within ninety (90) days of the date she received the notice of her right to sue.

## Facts

13. Waffle House operates multiple locations in Calhoun County, Alabama.

14. On June 6, 2016 Rebecca Vinson was hired to work at Oxford's Waffle House # 461 in a tipped server position.

15. Defendant Howell also worked at this location as Vinson's direct supervisor, having been hired as a store manager with Waffle House in April 2016.

16. Between June 2016 and January 2017, Vinson began to receive unwanted comments from Howell while on the job, which she never heard him state to any other employee or person otherwise present at #461.

17. Howell persistently told Vinson that she was sexually attractive and that she need only call him on his phone personally if she ever "needed anything".

18. Vinson was intimidated by these statements, never reciprocated his advances, and would attempt to leave or ignore each conversation.

19. Prior to January 2017, Vinson bought new clothing that was several sizes larger than necessary for the purposes of hiding the shape of her body.

20. Howell nonetheless continued his advances, which led Vinson to believe he would not quit, and that there was a danger to her job of overtly asking him to.

21. As a condition of employment, Vinson had furnished her cell phone number to her employer. Howell possessed this phone number.

22. In December 2016, Vinson began to receive text messages from Defendant Howell's phone number: that he, Howell, was an attractive person, that Vinson was attractive, and that they should be together.

23. Vinson texted her relief manager with news of the texts. Her manager stated that Howell was likely only drunk, and nothing further was done.

24. In January 2017, during store hours, Howell stated in front of the entire present staff that Vinson should request a transfer so that they could start dating.

25. Since starting at #461, Vinson had been open about her desire to transfer eventually to Oxford's #1284, where she expected better pay, tips, and hours.

26. She received Howell's words as a *quid pro quo* statement that slept with Howell and requested a transfer, so they could be together under company policy, he would help ensure that she received a transfer to the store of her choice.

27. The following day, Howell publicly made the same statement.

28. At such point, Vinson believed that she was facing both a sexually hostile work environment with endless humiliating public comments of a romantic nature, and a *quid pro quo* type proposition from Howell.

29. Vinson chose to utilize the official antidiscrimination channels offered by Waffle House, by filing an internal complaint, a protected activity under Title VII.

30. The investigation was ineffective in bringing an end to the discrimination.

31. Waffle House had authority to terminate, reprimand, or otherwise remedy the problem of Howell's behavior during the investigation.

32. On information and belief, Waffle House was actually aware that Howell had been separated from his previous job on sexual harassment allegations.

33. At the end of the investigation, Howell remained in his position as did Vinson.

34. Between the investigation and Vinson's termination, Howell continued to harass her, but the discrimination also took a retaliatory tone.

35. Howell began to scrutinize, discipline, and micromanage Vinson in particular in a manner never observed prior to the investigation.

36. Following the investigation, Howell commented on Vinson's boyfriend, stating that the boyfriend had better be "treating her well" or that Howell would "do something about it".

37. Around the last week of April 2017, Howell inquired of Vinson whether he made her "sexually nervous".

38. Vinson was supposed to be on vacation on May 6, 2017, having followed company procedure for the request months in advance.

39. On Thursday, May 4, 2017, a double shift-scheduled coworker was granted leave for a party during evening shift of Friday without notice and was not reprimanded for not showing up the next morning shift. Another co-worker was released for the busy May 7th, 2017 Sunday shift without extended notice.

40. The day before her leave, and contrary to his contemporaneously generous accommodations of others, Howell told her he would not permit Vinson to take May 6th off, berated her, and wrote her up for insubordination.

41. At this point, Vinson believed that Howell was determined to have her romantically, would never stop making public or private sexually-charged comments

towards her in particular, would never be properly disciplined by Waffle House, and would continue to retaliate against her for filing an investigation against him.

42. Vinson desperately called Jones to request an immediate transfer to another Oxford store. Jones stated that she would be transferred at the end of the week as a server to a store in Anniston on a reduced hourly basis and on a different shift.

43. On May 12, 2017, location manager Chris Forbes called Vinson before her start date the next day and told her that she would now be working as a Cook.

44. Vinson stated that that would be impossible as she had received no cross training or re-training in the position since she had last worked it around 2011.

45. Waffle House's duties, skills, training, and customs for the Cook position had all been updated and modified since 2011.

46. Vinson appeared Saturday to work in her job position of Server. She again stated that she could not possibly be a Cook. At that point Chris Forbes told her she was "out", meaning 'fired'

47. Vinson confirmed this by calling her shift scheduler, as well as Cooley, and as well as President Rusty Whaley.

48. She was later informed by Waffle House that she had voluntarily abandoned her job, a claim which Vinson categorically denied.

## COUNT ONE: VIOLATION OF TITLE VII

49. All foregoing paragraphs are realleged and incorporated by reference herein.

50. In violation of 42 U.S.C. § 2000e-2(a)(1), Waffle House discriminated against Vinson, a qualified woman, with respect to compensation, terms, conditions, or privileges of employment on the basis of her sex.

51. Vinson was the subject of unwelcome sexual harassment from her supervisor in the form of sexual advances;

52. The harassment would be offensive to the average reasonable woman and the harassment was in fact offensive to Vinson;

53. Cumulatively, the harassment from Howell was sufficiently severe, pervasive, and humiliating to affect a term, condition, and/or privilege of Vinson's employment.

54. Vinson's refusal to submit to her supervisor's sexual demands resulted in a tangible job detriment, including continued harassment, on the job humiliation, retaliation, pretextual discipline, and a transfer into a position she could not fulfill;

55. Defendant Waffle House is strictly liable for the tangible employment acts of its supervisors.

56. Alternatively, Waffle House is required under both state and federal law to take reasonable action to screen its supervisors to avoid potential harassers, adequately train its supervisors, prevent acts of supervisor discrimination and take appropriate corrective action when sexual harassment occurs. This did not happen.

57. Instead, Waffle House acted either maliciously or with reckless indifference to Vinson's rights under federal law by failing to take any prompt and effective remedial action reasonably calculated to result in the prevention or remedy of the sexual harassment.

58. Vinson believes, and thus avers, that the effect of Waffle House's agent sexually harassing her without adequate corporate remedy has been to limit, classify and discriminate against her as a female employee in ways that jeopardize and tend to deprive her of employment opportunities and otherwise adversely affect her status as an employee because of her sex in violation of Title VII.

WHEREFORE, PREMISES CONSIDERED, Vinson respectfully requests an Order, directing that she be made whole in the form of:

59. A declaratory judgment that the employment policies, practices, procedures, conditions, and customs of Waffle House are violative of the rights of the Plaintiff as secured by Title VII;

60. A permanent injunction enjoining Waffle House, its agents, successors, and employees from continuing to violate Title VII;

61. Front pay, back pay plus interest, compensatory damages, punitive damages, special damages, injunctive and declaratory relief;

62. Reasonable attorney fees as well as the costs and expenses of this action; and

63. Any alternative relief as this Court may deem proper under the circumstances.

## COUNT TWO: TITLE VII RETALIATION

64. All foregoing paragraphs are realleged and incorporated by reference herein.

65. Title VII makes it illegal for employer Waffle House or its agents to discriminate against Vinson because she has opposed any practice made unlawful by Title VII, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

66. Vinson's internal complaint against Howell was such protected conduct.

67. Vinson suffered an adverse employment action, most directly from her sexually-harassing direct manager Howell. Because of her complaint, Howell's harassment continued, and he began pretextually scrutinizing her work and writing her up leading her to desperately seek a undesirable transfer to escape.

68. Further, she was fired by Waffle House immediately upon transfer after being unable to fulfill a role she had no training in. Waffle House had notice and could have easily filled the position without termination and had done so on previous occasions. Vinson believes that this behavior was also caused by her filing an internal complaint and jeopardizing the employment of Waffle House's new manager, Howell.

WHEREFORE, PREMISES CONSIDERED, Vinson respectfully requests an Order, directing that she be made whole in the form of:

69. A declaratory judgment that the employment policies, practices, procedures, conditions, and customs of Waffle House are violative of the rights of the Plaintiff against retaliation as secured by Title VII; a permanent injunction enjoining Waffle House, its agents, successors, and employees from continuing to violate Title VII; front pay, back pay plus interest, compensatory damages, punitive damages, special damages, other proper injunctive and declaratory relief, as well as reasonable attorney fees and the costs and expenses of this action; and any alternative or additional relief as this Court may deem proper under the circumstances.

## COUNT THREE – ALABAMA COMMON LAW CLAIM FOR NEGLIGENT TRAINING, RETENTION, AND SUPERVISION

70. The foregoing paragraphs are realleged and incorporated by reference herein.

71. Defendant Howell's sexually-harassing actions constituted an incompetency, as they were grossly inconsistent with his stated job duties and responsibilities with respect to his employee Vinson.

72. The other Defendants alternatively either had knowledge of these incompetencies, or due to the nature, character, and frequency of the incompetencies, should have been aware of them.

73. The other Defendants collectively possessed a duty to their employee Vinson to abide by a reasonable standard of care to prevent sexual harassment by her supervisor Howell.

74. The other Defendants failed to properly train, monitor, or supervise Howell to ensure non-discriminatory behavior.

75. Had the other Defendants exercised proper diligence either before or during their investigation, Vinson would have been protected from pervasive sexual comments, emotional distress, retaliation, and a desperate job-ending transfer.

76. Instead, the other Defendants' continued retention of Howell at the same location after the investigation constituted ratification of his conduct.

77. Defendants breached said duty and caused damages to Vinson, including the loss of job opportunities, loss of employment, lost wages, and severe emotional distress.

WHEREFORE, PREMISES CONSIDERED, Vinson requests that this Court enter an order, holding the Defendants jointly and severally liable and directing that she be awarded:

78. Damages for lost earnings, wages, and other benefits, pre-judgment and post-judgment interest, damages for mental and emotional distress, punitive damages, reasonable attorneys' fees, costs and expenses, as well as any other relief the Court deems just and appropriate.

## COUNT SEVEN- ALABAMA COMMON LAW – OUTRAGE

79. The foregoing paragraphs are realleged and incorporated by reference herein.

80. Waffle House, Jones, and Cooley were placed on notice of Howell's harassing conduct, which was conducted in the line and scope of his employment.

81. Howell and the other Defendants knew or should have known that Howell's conduct would create a hostile work environment and cause Vinson severe emotional distress.

82. Howell and the other Defendants actually knew that Howell's conduct was causing severe distress because Vinson had repeatedly complained to her co-workers and other managers and even filed an internal complaint.

83. Vinson used the proper complaint channels in response, but Howell was allowed to remain at Vinson's store and continued to harass and retaliate against her to the point that she was forced to move to another store into a position she could not fulfill.

84. Defendants' conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and is atrocious and utterly intolerable in a civilized society.

85. These acts caused damages in the form of Vinson's loss of employment, lost earnings and wages, as well as severe humiliation and emotional distress.

86. The Defendants are each charged with this claim and are jointly and severally liable for damages.

WHEREFORE, PREMISES CONSIDERED, Vinson requests that this Court enter an order, directing that she be compensated in the form of:

87. Actual damages for lost earnings, wages, and other benefits, pre-judgment interest, damages for mental and emotional distress, punitive damages, reasonable attorneys' fees, costs and expenses, as well as any other relief the Court deems just and appropriate.

**PLAINTIFF REQUESTS A TRIAL BY STRUCK JURY ON ALL CLAIMS SO TRIABLE.**

Respectfully submitted,

**/s Nathaniel C. Abell**
Nathaniel C. Abell (ABE 019)
ASB-4537-L84L
ENZOR & MANISCALCO, LLP
506 Main Street
Oxford, Alabama 36203
Tel: 256-770-7232
Fax: 256-770-7234
Email: nathan@lawoxford.com
*Attorney for Plaintiff*

**OF COUNSEL:**

ENZOR AND MANISCALCO, LLP
506 Main Street
Oxford, Alabama 36203
Tel:   (256) 770-7232
Fax:   (256) 770-7234